Matthew B. Hayhurst
Thomas J. Leonard
BOONE KARLBERG P.C.
201 West Main, Suite 300
P.O. Box 9199
Missoula, MT 59807-9199
Telephone: (406) 543-6646
mhayhurst@boonekarlberg.com
tleonard@boonekarlberg.com

Philip J. Peisch (*Pro Hac Vice* pending)
Kendra Doty (*Pro Hac Vice* pending)
Abigail Holisher (*Pro Hac Vice* pending)
BROWN & PEISCH
1220 19th St. NW
Washington, DC 20036
Telephone: (202) 499-4261
ppeisch@brownandpeisch.com
kdoty@brownandpeisch.com
aholisher@brownandpeisch.com

*Attorneys for Defendants State of Montana and Montana
Department of Public Health and Human Services*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| ZOE JOHNSON; ANNETTE CLAFLIN; for themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF MONTANA; MONTANA DEPARTMENT OF PUBLIC HEALTH AND HUMAN SERVICES<br><br>Defendants. | Cause No. 9:26-cv-00071-KLD<br><br>**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS** |

**TABLE OF CONTENTS**

INTRODUCTION…………………………………………………………………1

FACTUAL BACKGROUND…………………………………………………………1

MOTION TO DISMISS STANDARD………………………………………………..3

ANALYSIS……………………………………………………………………3

I.    THE NEGLIGENCE CLAIM (COUNT ONE) SHOULD
      BE DISMISSED BECAUSE IT IS BASED ON ALLEGED
      NONCOMPLIANCE WITH FEDERAL MEDICAID LAW
      THAT IS NOT PRIVATELY ENFORCEABLE……………………………..3

      A.    The Federal Medicaid Law Underlying Plaintiffs'
            Claim Is Not Privately Enforceable Under Federal Law……………..4

      B.    The Federal Medicaid Law That Plaintiffs Cite Is
            Not Privately Enforceable Under State Law…………………………8

II.   THE NEGLIGENCE PER SE CLAIM (COUNT TWO)
      SHOULD BE DISMISSED BECAUSE IT IS BASED ON
      ADMINISTRATIVE REGULATIONS, RATHER THAN
      A STATUTE CONFERING A PRIVATE RIGHT OF ACTION…………...12

      A.    The Claim Is Based on Alleged Regulatory Violations……………..12

      B.    The Referenced Statutes and Regulations Do Not
            Create a Private Right of Action…………………………………14

III.  ALTERNATIVELY, THE MAJORITY OF ALLEGED
      VIOLATIONS OF FEDERAL MEDICAID LAW ARE
      UNSUPPORTED BY PLAUSIBLE FACTUAL ALLEGATIONS………..15

      A.    Plaintiffs' Claims Fail to the Extent They Are Based
            on Section 435.916(a)(2), (b) (2023)…………………………..16

      B.    Plaintiffs' Claims Fail to the Extent They Are Based
            on Section 435.908(a)……………………………………………18

C.    Plaintiffs' Claims Fail to the Extent They Are Based on Section 1396a(a)(10)(A) and Its Implementing Regulations…………………………………………………………..19

D.    Plaintiffs' Claims Fail to the Extent They Are Based on Section 435.930(b)…………………………………………………..21

E.    Plaintiffs' Claims Fail to the Extent They Are Based on Sections 435.916(f)(1) (2023) and 435.911(c)(2)…………………...22

IV.    THE DECLARATORY JUDGMENT CLAIMS (COUNTS FOUR AND FIVE) SHOULD BE DISMISSED BECAUSE THEY ASK THE COURT TO DECLARE THE STATE, IN THE PAST, VIOLATED STATUTES THAT DO NOT GIVE RISE TO A PRIVATE RIGHT OF ACTION……………………………….22

A.    The Statutes and Regulations Upon Which the Declaratory Judgment Claim Is Based Do Not Provide for a Private Cause Of Action…………………………………………………………….23

B.    Plaintiffs' Request for Declaratory Relief is Non-Justiciable……….24

C.    Alternatively, the Court Should Decline Jurisdiction Over Plaintiffs' Substitute Claim for Declaratory Relief…………………..26

V.    ALTERNATIVELY, THE CONSTITUTIONAL TORT CLAIM (COUNT THREE) SHOULD BE DISMISSED IF ALTERNATIVE REMEDIES EXIST UNDER STATE LAW…………….27

VI.    DPHHS SHOULD BE DISMISSED AS A SEPARATE DEFENDANT…………………………………………………………...28

CONCLUSION…………………………………………………………...29

## TABLE OF AUTHORITIES

**Federal Cases**                                                                                          **Page(s)**

*Alexander v. Sandoval*,
  532 U.S. 275 (2001) .................................................................................... 7

*Am. Ass'n of People with Disabilities v. Harris*,
  605 F.3d 1124 (11th Cir. 2010) ................................................................. 7

*Armstrong v. Exceptional Child Ctr., Inc.*,
  575 U.S. 320 (2015) .............................................................................. 5, 10

*Ashcroft v. Iqbal*,
*556 U.S. 662* .............................................................................................. 14

*Ashcroft v. Mattis*,
  431 U.S. 171 (1977) .................................................................................. 25

*Bayer v. Neiman Marcus Grp., Inc.*,
  861 F.3d 853 (9th Cir. 2017) ................................................................... 25

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................... 3

*Boyle v. Madigan*,
  492 F.2d 1180 (9th Cir. 1974) ................................................................. 16

*Health & Hosp. Corp. v. Talevski*,
599 U.S. 166................................................................................................ 6

*Howell v. Earl, No. CV 13-48-BU-DWM-JCL,*
2014 U.S. Dist. LEXIS 82450 (D. Mont. May 30, 2014) ..................................... 14

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ................................................................... 3

*In re Madeline Marie Nursing Homes*,
  694 F.2d 433 (6th Cir. 1982) ................................................................... 11

*In re Monroy*,
   650 F.3d 1300 (9th Cir. 2011) ................................................................. 9

*ISE Entm't Corp. v. Longarzo, No. CV 17-9132-MWF*
   (JCx), 2018 LX 19231, at \*30-31 (C.D. Cal. Feb. 2, 2018) ....................... 26-27

*Iverson v. City of Boston*,
   452 F.3d 94 (1st Cir. 2006) ..................................................................... 7

*Jensen v. Quality Loan Serv. Corp.*,
   702 F. Supp. 2d 1183 (E.D. Cal. 2010) .................................................. 26

*Jevons v. Inslee, No. 22-35050*,
   2023 U.S. App. LEXIS 20453 (9th Cir. Aug. 8, 2023) ............................. 25

*Jordan v. Sosa*,
   654 F.3d 1012 (10th Cir. 2011) .............................................................. 25

*Kamath v. Robert Bosch LLC*,
   2014 U.S. Dist. LEXIS 88298 (C.D. Cal. June 26, 2014) ......................... 15-16

*Medina v. Planned Parenthood S. Atl.*,
   606 U.S. 357 (2025) .......................................................................... *passim*

*Montana v. Zapata, No. CV-21-79-GF-BMM*,
   2023 U.S. Dist. LEXIS 36040 (D. Mont. Mar. 3, 2023) ........................... 27, 28

*Murphy v. Hunt*,
   455 U.S. 478 (1982) (per curiam) .......................................................... 25, 26

*Ratcliff v. City of Red Lodge, No. CV 12-79-BLG-DWM-JCL*,
   2014 U.S. Dist. LEXIS 17580 (D. Mont. Jan. 10, 2014) ......................... 15

*Rolo v. City Investing Co. Liquidating Tr.*,
   155 F.3d 644 (3d Cir. 1998) .................................................................. 16

*Ross v. Alaska*,
   189 F.3d 1107 (9th Cir. 1999) .............................................................. 24

*Savage v. Glendale Union High Sch.*,
    343 F.3d 1036- 40 (9th Cir. 2003) ........................................................ 3

*Seymour v. Contreraz*,
    2023 U.S. Dist. LEXIS 148582 (D. Mont. Aug. 23, 2023) ........................ 27, 28

*Shell Gulf of Mex. Inc. v. Ctr. for Biological Diversity, Inc.*,
    771 F.3d 632 (9th Cir. 2014) ................................................................ 24

*Siino v. Foresters Life Ins. & Annuity Co.*,
    133 F.4th 936 (9th Cir. 2025) ............................................................... 23

*Spencer v. Kemna*,
    523 U.S. 1 (1998) ................................................................................. 24

*Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*,
    767 F.3d 554 (6th Cir. 2014) ................................................................. 7

*Tatum v. Chrysler Grp. LLC, No. 10- 4269*,
    2012 U.S. Dist. LEXIS 171746 (D.N.J. Dec. 3, 2012) ............................... 16

*Trinh v. Homan*,
    466 F. Supp. 3d 1077 (C.D. Cal. 2020) ................................................... 25

*Viswanadha v. Mayorkas*,
    660 F. Supp. 3d 759 (N.D. Ind. 2023) .................................................... 13

*Whitaker v. Tesla Motors, Inc.*,
    985 F.3d 1173 (9th Cir. 2021) ............................................................... 14

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ............................................................... 3

**State Cases**

*Brisendine v. Dep't of Commerce*,
    833 P.2d 1019 (Mont. 1992) ................................................................. 23

*Doyle v. Clark*,
    254 P.3d 570 (Mont. 2011) .................................................................... 12, 14

*Estate of Frazier v. Miller*,
484 P.3d 912 (Mont. 2021) .............................................................. 27, 28

*Harwood v. Glacier Elec. Coop.*,
949 P.2d 651 (Mont. 1997) ............................................................. 12, 13

*Held v. State*,
560 P.3d 1235 (Mont. 2024) ................................................................. 9

*Jackson v. Department of Family Serv.*,
956 P.2d 35 (Mont. 1997) .................................................................. 8, 9

*Kageco Orchards, Ltd. Liab. Co. v. Mont. DOT*,
528 P.3d 1097 (Mont. 2023) ................................................................ 24

*Lyman Creek, LLC v. City of Bozeman*,
450 P.3d 872 (Mont. 2019) ................................................................. 23

*Md. Cas. Co. v. Asbestos Claims Court*,
460 P.3d 882 (Mont. 2020) ................................................................... 8

*Meloy v. Speedy Auto Glass, Inc.*,
182 P.3d 741 (Mont. 2008) ................................................................... 8

*Murray v. Motl*,
354 P.3d 197 (Mont. 2015) ............................................................. 24, 27

*Prindel v. Ravalli Cty.*,
133 P.3d 165 (Mont. 2006) ............................................................... 9, 11

*Sunburst Sch. Dist. No. 2 v. Texaco, Inc.*,
165 P.3d 1079 (Mont. 2007) ............................................................... 27

*Tally Bissell Neighbors, Inc. v. Eyrie Shotgun Ranch, Ltd. Liab. Co.*,
228 P.3d 1134 (Mont. 2010) ............................................................ 27, 28

*Wenger v. State Farm Mut. Auto. Ins. Co.*,
483 P.3d 480 (Mont. 2021) ................................................................... 8

## Federal Statutes

42 U.S.C. § 1396a(a)(10)(A) ............................................................ *passim*
42 U.S.C. § 1396c ...................................................................... 5, 11
42 U.S.C. § 1983 .......................................................................... 5
42 U.S.C. §§ 1396-1396w-7 ............................................................ 13

## State Statutes

Mont. Code Ann. § 2-9-101(7) ........................................................ 28
Mont. Code Ann. § 2-9-313 ............................................................ 28
Mont. Code Ann. §§ 27-8-101, et seq. ............................................... 22
Mont. Code Ann. § 27-8-201 ........................................................... 23
Mont. Code Ann. § 27-8-202 ........................................................... 23

## Other

42 C.F.R. §§ 430.32–430.49 ........................................................ 11, 21
42 C.F.R. Part 431, Subpart E ....................................................... 11, 21
42 C.F.R. Part 435, Subpart J ........................................................ 20
42 C.F.R. §§ 435.100–435.172 ........................................................ 18
42 C.F.R. § 435.116 .................................................................... 18
42 C.F.R. § 435.118 .................................................................... 18
42 C.F.R. § 435.403 .................................................................... 17
42 C.F.R. § 435.603 .................................................................... 18
42 C.F.R. § 435.908(a) .............................................................. 18, 19
42 C.F.R. § 435.916 ................................................................. 17, 21
42 C.F.R. § 435.916(a)(2) ............................................................. 18
42 C.F.R. § 435.916(b)(2)(iii) ........................................................ 20
42 C.F.R. § 435.919 ................................................................... 20
42 C.F.R. § 435.930(b) ................................................................ 21
42 C.F.R. § 435.956 ................................................................... 17
Pub. L. No. 119-21, § 71102 ........................................................... 4

## INTRODUCTION

Plaintiffs allege Defendants State of Montana and Department of Public Health and Human Services (collectively, "State") violated the Medicaid Act and its implementing regulations by temporarily disenrolling them from Medicaid.  The Medicaid Act allows Congress to offer funds to states that agree to certain conditions, but typically does *not* allow private enforcement of a state's violations of those conditions.  *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 365-66 (2025).  In an effort to circumvent this law, Plaintiffs have styled their claims for federal statutory violations as state law claims.  Their novel approach finds no support in any legal authority, and this Court should reject the attempt to subvert *Medina*.  For this reason, and the additional reasons outlined below, the State's Motion to Dismiss should be granted.

## FACTUAL BACKGROUND

Plaintiffs Zoe Johnson and Annette Claflin allege that despite being Medicaid eligible, they were temporarily disenrolled for "procedural reasons." (Doc. 4 at ¶¶ 11, 78, 84, 98-104.)  The disenrollments occurred during the so-called "unwinding" period, after Congress lifted a nearly three-year federal pause on Medicaid redeterminations that had been in place during the COVID-19 pandemic. (*Id*. at ¶ 4.)  The purpose of the unwinding, mandated by the federal government, was to ensure that only properly qualified beneficiaries receive Medicaid benefits.

1

Despite claiming their "procedural disenrollments" violated federal law, Plaintiffs' Complaint is very short on the details of the procedures at issue, and in particular Plaintiffs' *own* failures to provide the State with reasonably requested information.  But even taking all well pleaded-factual allegations as true, Plaintiffs claims fail to state a viable claim for relief.

Ms. Johnson qualifies for Medicaid as a former foster youth under 26 years of age.  (*Id*. at ¶ 75.)  Plaintiff alleges she was disenrolled without notice, and that her application for reenrollment was not processed in a timely manner.  (*Id*. at ¶¶ 75, 77, 78.)

Ms. Claflin is a 56-year-old Medicaid enrollee with disabilities.  (*Id*. at ¶ 80.)  It is alleged she was disenrolled for failure to complete the redetermination packet, which she claims to have never received.  (*Id*. ¶ 84)

Despite being reenrolled in Medicaid, Plaintiffs seek additional compensation for alleged out-of-pocket medical costs and non-economic damages such as "foregone medical treatment and its effects and the associated anxiety and distress."  (*Id*. at ¶¶ 11, 78, 79, 84, 85.)

Plaintiffs filed their lawsuit in the Montana Fourth Judicial District on March 30, 2026.  (*Id*.)  The State removed the case to this Court on federal question grounds.  (Doc. 1.)  Plaintiffs assert five counts in the complaint: (1) Negligence, (2) Negligence Per Se, (3) Constitutional Tort—Procedural Due

Process, (4) Declaratory Judgment and (5) Supplemental Relief.  (Doc. 1-1.)  Each should be dismissed for failure to state a claim upon which relief can be granted.

## MOTION TO DISMISS STANDARD

To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A court must accept as true all material factual allegations and draw all reasonable inferences in the non-moving party's favor, but is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

A motion to dismiss under Rule 12(b)(1) tests the subject matter jurisdiction of the court.  *See, e.g., Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039-40 (9th Cir. 2003).  Justiciability pertains to a federal court's subject matter jurisdiction under Article III and is properly raised, as here, in a motion to dismiss under Rule 12(b)(1).  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

## ANALYSIS

**I.    THE NEGLIGENCE CLAIM (COUNT ONE) SHOULD BE DISMISSED BECAUSE IT IS BASED ON ALLEGED NONCOMPLIANCE WITH FEDERAL MEDICAID LAW THAT IS NOT PRIVATELY ENFORCEABLE.**

Plaintiffs' Count One does not expressly cite federal Medicaid statutes or regulations (though it incorporates prior allegations), but all of the purported

"duties" on which it is based arise from federal Medicaid law.  For example, Plaintiffs claim the State violated its "duties" to: "provid[e] adequate notice of redeterminations and disenrollments" consistent with 42 C.F.R. §§ 431.201, 431.210, 431.220; "ensur[e]" Medicaid coverage for "individuals belonging to" mandatory coverage groups in 42 U.S.C. § 1396a(a)(10)(A) and 42 C.F.R. §§ 435.100–435.172, 603(j); "reenroll[] individuals belonging to mandatory coverage groups ex parte, without requiring them to complete redetermination paperwork," as Plaintiffs claim is required by 42 C.F.R. § 435.916(a)(2), (b)[1]; and offer individuals assistance with their redeterminations, which Plaintiffs argue is required by 42 C.F.R. § 435.908(a).  (Doc. 1-1, ¶¶ 52-55, 98-104, 107-114, 125-132.)  A claim does not arise from alleged noncompliance with federal Medicaid law that is not privately enforceable.

A.    **The Federal Medicaid Law Underlying Plaintiffs' Claim Is Not Privately Enforceable Under Federal Law.**

Private parties generally may not enforce federal statutes or regulations through private actions because "[t]he Constitution charges the Executive Branch

---

[1] The Centers for Medicare & Medicaid Services (CMS) promulgated several changes to Section 435.916 effective June 3, 2024, but Congress imposed a moratorium on those changes, *see* Pub. L. No. 119-21, § 71102.  Plaintiffs' Complaint cites the 2023 version of the regulation and, for ease of reading, the State does the same.  (None of CMS's changes to Section 435.916 directly impact Plaintiffs' theories of liability.)

with enforcing federal law." *See Medina*, 606 U.S. at 367.  However, in the wake

of the Civil War, Congress enacted 42 U.S.C. § 1983, which created a limited

authorization for "individuals to sue anyone who, under color of state law, deprives

them of 'rights, privileges, or immunities secured by the Constitution and laws' of

the United States."  *See id.* (quoting § 1983).

As "th[e] [Supreme] Court has emphasized," even with the enactment of

Section 1983, "statutes create individual rights only in 'atypical cases,'" and

"spending-power statutes like Medicaid are especially unlikely to do so."  *See id.* at

368–69.  This is because Congress's authority to create Spending Clause programs

arises out of Article I, Section 8, which "does not expressly endow Congress with

the power to regulate conduct" or "to issue direct orders to the governments of the

States."  *See id.* at 370 (internal quotation and citation omitted).  Statutes

governing Medicaid and other state-administered Spending Clause programs are

"more like treaties between two sovereignties," which "generally do not confer

individually enforceable rights against a sovereign, but depend for the enforcement

of their provisions on the governments which are parties to them."  *See id.* at 370–

72 (cleaned up).  Accordingly, "the 'typical remedy for state noncompliance' with a

federal grant's conditions is an 'action by the Federal Government to terminate

funds to the State.'"  *See id.* at 373; *Armstrong v. Exceptional Child Ctr., Inc.*, 575

U.S. 320, 328 (2015) (citing 42 U.S.C. § 1396c).

"[W]hether a private party may sue to enforce the terms of a federal grant depends on 'whether the State voluntarily and knowingly consented to answer private claims as part of its bargain with the federal government." *Medina*, 606 U.S. at 373. This requires a plaintiff to show, "at a minimum, that Congress alerted the State in advance, 'clear[ly]' and 'unambiguously,' that responding to private enforcement suits was a condition of its offer" to participate in the Spending Clause program. *Id.*

Applying these principles, *Medina* held that a provision of the Medicaid Act is not privately enforceable through Section 1983 unless the statute "clearly and unambiguously uses rights-creating terms" and "display[s] an unmistakable focus on individuals like the plaintiff." *Id.* at 368 (cleaned up). This "'stringent' and 'demanding' test" seeks "to 'vindicate the separation of powers." *See id.* at 358, 368 (quoting *Talevski*, 599 U.S. at 180, 186).

In this case, the only specific Medicaid statutory provision that Plaintiffs cite, Section 1396a(a)(10)(A), is entirely devoid of any "rights-creating terms." Section 1396a(a)(10)(A) simply provides that "[a] State plan for medical assistance must . . . provide" for making certain Medicaid services "available" to certain categories of qualifying individuals. 42 U.S.C. § 1396a(a)(10)(A). Accordingly, Section 1396a(a)(10)(A) is not privately enforceable through Section 1983.

6

Nor can Plaintiffs privately enforce any of the regulations on which they rely through Section 1983.  "[A] private plaintiff may not . . . enforce regulations that interdict a broader swath of conduct than the statute itself prohibits," in part because only Congress has the authority to create private causes of action for noncompliance with federal law.  *Iverson v. City of Boston*, 452 F.3d 94, 100 (1st Cir. 2006) (citing *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)); *see Stew Farm, Ltd. v. Nat. Res. Conservation Serv.*, 767 F.3d 554, 564 (6th Cir. 2014); *Am. Ass'n of People with Disabilities v. Harris*, 605 F.3d 1124, 1133 (11th Cir. 2010). In other words, a plaintiff may not privately enforce a federal regulation, *unless* the regulation is limited to requirements imposed by the underlying statute *and* that underlying statute "clearly and unambiguously uses rights-creating terms" and "display[s] an unmistakable focus on individuals like the plaintiff," *Medina*, 606 U.S. at 368 (cleaned up).

In this case, Plaintiffs do not identify any regulation that does not "interdict a broader swath of conduct than the [Medicaid Act] itself prohibits" and is implementing a provision of the Medicaid Act that "clearly and unambiguously uses rights-creating terms."  Plaintiffs cannot privately enforce those regulations.

Plaintiffs attempt an end run around *Medina* and other federal case law by seeking to enforce federal Medicaid law through a state law negligence claim.  As explained below, a state negligence claim is not a proper vehicle to enforce

7

compliance with federal Medicaid law that is not privately enforceable under Section 1983.

**B.      The Federal Medicaid Law That Plaintiffs Cite Is Not Privately Enforceable Under State Law.**

To plead negligence under Montana law, the plaintiff must show the defendant breached a legal duty owed to the plaintiff.  *See, e.g.*, *Meloy v. Speedy Auto Glass, Inc.*, 182 P.3d 741, ¶ 15 (Mont. 2008).  The existence of a legal duty "is a question of law determined by the court."  *Wenger v. State Farm Mut. Auto. Ins. Co.,* 483 P.3d 480, ¶ 12 (Mont. 2021).  In answering that question here, the Court must "determine 'whether long-standing common law causes of action should be applied'" to the State's alleged noncompliance with federal Medicaid law.  *See Jackson v. Department of Family Serv.*, 956 P.2d 35, ¶ 27 (Mont. 1997) (analyzing whether negligence principles should be applied in the adoption context).

One generally owes a common law duty of care to another in a particular case only if the harm at issue is of a type reasonably foreseeable under the circumstances and, if so, imposition of such duty and liability comports with public policy. *Md. Cas. Co. v. Asbestos Claims Court,* 460 P.3d 882, ¶ 27 (Mont. 2020). Those policy considerations include: "(1) the moral blame attached to a defendant's conduct; (2) the prevention of future harm; (3) the extent of the burden placed on the defendant; (4) the consequences to the public of imposing such a

8

duty; and (5) the availability and cost of insurance for the risk involved." *Prindel v. Ravalli Cty.*, 133 P.3d 165, ¶ 37 (Mont. 2006) (internal citation omitted).

In this case, Plaintiffs cannot prevail on their negligence claim because the State does not have a common law "duty" to Plaintiffs to comply with the federal Medicaid provisions Plaintiffs cite. Plaintiffs' Complaint cites no case law—and the State's counsel have found none—holding that "common law causes of action should be applied" to a state's alleged noncompliance with federal Medicaid law. *See Jackson*, ¶ 27 (analyzing whether courts in other jurisdictions have recognized a negligence cause of action for breach of the alleged common law "duty").

The lack of precedent supporting Plaintiffs' theory of liability is not surprising. The fact that the federal Medicaid law at issue does *not* create "rights" under federal law demonstrates that it does not impose any "duties" on the State in common law. "Duty" and "right" are correlative terms that are the opposite sides of the same coin: if a plaintiff does not have a "right" to something from the defendant, the defendant does not have a "duty" to provide it to the plaintiffs. *See In re Monroy*, 650 F.3d 1300, 1301 (9th Cir. 2011) ("'Right and duty are therefore correlatives, since in this sense there can never be a duty without a right.'"); *Held v. State*, 560 P.3d 1235, ¶ 36 (Mont. 2024) ("'Montanans' right to a clean and healthful environment is contemplated by an affirmative duty upon their government to take active steps to realize this right.'"). In this case, because the

9

federal Medicaid law cited by Plaintiffs does not confer any "rights" on Plaintiffs, *see* Section I(A), *supra*, the State does not have any "duties" to Plaintiffs under those statutory or regulatory provisions.  The State may have obligations to the <u>federal government</u> to comply with the Medicaid Act, but it does not have any "duty" of compliance to the <u>Plaintiffs</u>.  *See Medina*, 606 U.S. at 372; *Armstrong*, 575 U.S. at 328.

Further, policy considerations—including "the extent of the burden placed on the defendant" and "the consequences to the public of imposing such a duty"— weigh against holding that federal Medicaid law gives rise to state negligence law "duties" to Plaintiffs.  Privately enforcing Medicaid law through a state law claim is inconsistent with the Constitution's delegation of enforcement of federal law to the Executive Branch; would violate the principle that only Congress can authorize private enforcement of federal Medicaid law; and is inconsistent with *Medina*'s instruction that Congress must "alert[] the State in advance, 'clear[ly]' and 'unambiguously,' that responding to private enforcement suits was a condition of its offer" to participate in Medicaid, *see Medina*, 606 U.S. at 373.  When Montana agreed to the Medicaid "bargain" with the federal government, Congress did not provide any notice that Montana would be subject to state tort liability for noncompliance with the plethora of requirements in the Medicaid Act and its

10

implementing regulations, let alone provide "clear" and "unambiguous" notice of such potential liability.

Subjecting Montana to tort liability for noncompliance with federal Medicaid law would be particularly burdensome, expensive, and problematic given the complexity and breadth of federal Medicaid law.  More than one court has described the Medicaid Act as "'an aggravated assault on the English language'" that is "'resistant to attempts to understand it'" and "'difficult to administer and interpret.'"  *In re Madeline Marie Nursing Homes*, 694 F.2d 433, 440 (6th Cir. 1982).  Plaintiffs' theory of liability would subject Montana to state tort liability for any deviation from the dozens of sections of a statute—and *hundreds* of its implementing regulations—that are "'complex,'" "'murky,'" and "'resistant to attempts to understand.'"  *See id.* at 440.  As the Supreme Court has warned, private enforcement of this type of complex statutory scheme would require Montana "to divert money and attention away from social services and toward litigation."  *Medina*, 606 U.S. at 385.

Finally, finding that a "duty" to Plaintiffs to comply with federal Medicaid law would *not* further "the prevention of future harm," *see Prindel*, ¶ 37, given that the federal government already has many tools to enforce compliance, *see* 42 U.S.C. § 1396c; 42 C.F.R. §§ 430.32–430.49, and that states must provide all Medicaid beneficiaries with a robust process to challenge any adverse action, *see*

42 C.F.R. Part 431, Subpart E.  As a result, state tort law claims arising out of alleged noncompliance with federal Medicaid law would be superfluous of already existing enforcement procedures.

**II.    THE NEGLIGENCE PER SE CLAIM (COUNT TWO) SHOULD BE DISMISSED BECAUSE IT IS BASED ON ADMINISTRATIVE REGULATIONS, RATHER THAN A STATUTE CONFERING A PRIVATE RIGHT OF ACTION.**

Plaintiffs allege the State committed negligence per se through its "violations of the Medicaid Act, 42 U.S.C. §§ 1396-1396w-7, and implementing regulations." (Doc. 1-1 at ¶ 107.)  There are at least two problems with this theory, and each is fatal.  First, a claim for negligence per se must be premised upon violations of a <u>statute</u>, rather than administrative regulations.  *Harwood v. Glacier Elec. Coop.*, 949 P.2d 651, 656 (Mont. 1997).  Second, a negligence per se claim in Montana requires a violation of a statute that creates a private right of action, *Doyle v. Clark*, 254 P.3d 570, ¶ 32 (Mont. 2011), which the Medicaid Act does not do, *e.g.*, *Medina*, 606 U.S. at 365-66.

**A.    The Claim Is Based on Alleged Regulatory Violations.**

All well-pleaded factual allegations in Count Two relate exclusively to the State's alleged violations of the Code of Federal Regulations (C.F.R.).  (Doc. 1-1 at ¶¶ 106-115.)  In other words, Plaintiffs fail to plausibly allege a single statutory violation.  (*Id*.)

"In order to impute liability to a defendant as a matter of negligence per se, [the Montana Supreme Court] has repeatedly stated that the defendant must have violated a *statute*, as opposed to merely an administrative regulation, safety code, or professional standard." *Harwood*, 949 P.2d at 656 (emphasis original). "The violation of a non-statutory standard may be used as evidence of negligence, but it is insufficient grounds on which to find the defendant negligent per se." *Id*. (citing cases).

The C.F.R. is a collection of regulations issued by administrative agencies, not statutes passed by Congress. *E.g., Viswanadha v. Mayorkas,* 660 F. Supp. 3d 759, 770 (N.D. Ind. 2023). Alleged violations of these federal regulations cannot form the basis of a negligence per se claim under Montana law. *Harwood*, 949 P.2d at 656.

While Plaintiffs briefly and conclusorily allege the State also violated "the Medicaid Act, 42 U.S.C. §§ 1396-1396w-7" (Doc. 1-1 at ¶ 107), they fail to identify any specific violation thereof. Indeed, of the dozens of statutory sections cited, most have no conceivable connection to any issue in this case, and instead impose duties on federal officials, rather than on the States. *See* 42 U.S.C. §§ 1396-1396w-7. The only specific statutory provision singled out in Count Two is 42 U.S.C. § 1396a(a)(10)(A) (Doc. 1-1 at ¶ 108), but Plaintiffs do not plead a violation of that provision, nor could they, *see* Section III(C), *infra*.

13

It is improper to conclusorily allege the violation of a massive federal act, leaving it to the defendants to guess which specific statutes might, or might not be, at issue.  Regardless, "[a] legal conclusion couched as a factual allegation" does not give fair notice and to enable the opposing party to defend itself effectively. *Iqbal*, 556 U.S. at 678.  Even if Plaintiffs had identified the specific statutes allegedly violated, which they have not, conclusory allegations that a statute was violated do not satisfy the *Twombly/Iqbal* standard.  *Whitaker v. Tesla Motors, Inc.,* 985 F.3d 1173, 1177 (9th Cir. 2021).

### B.    The Referenced Statutes and Regulations Do Not Create a Private Right of Action.

To prevail on a claim of negligence per se, a plaintiff must establish, among other things, that the defendant violated a particular statute, and "that the statute allegedly violated *allows a private right of action*."  *Doyle*, ¶ 32 (emphasis added). "[I]f the statute in question may be enforced only by the state, a private individual may not attempt to recover for violation of the statute under a negligence per se claim."  *Id.* at 577 (dismissing negligence per se claim based on alleged violations of the Motor Vehicle Recycling and Disposal Act, because the cited statutes did not create a private right of action); *Howell v. Earl*, No. CV 13-48-BU-DWM-JCL, 2014 U.S. Dist. LEXIS 82450, at *51 (D. Mont. May 30, 2014) (dismissing negligence per se claim because "nothing in the statute [on arrests in a private dwellings] suggests that the Legislature intended to grant individuals a private right

14

of action"); *Ratcliff v. City of Red Lodge,* No. CV 12-79-BLG-DWM-JCL, 2014 U.S. Dist. LEXIS 17580, at *35-36 (D. Mont. Jan. 10, 2014) (dismissing negligence per se claim based on violations of Montana criminal statutes defining assault and related crimes because they did not create a private right of action).

In this case, Plaintiffs' negligence per se claim is based on allegations that Defendants violated the same provisions of Medicaid law discussed in Section I(A), *supra*.  (Doc. 1-1 at ¶¶ 107-114.)  As set forth above, those provisions of federal Medicaid law do not create a private right of action.  Accordingly, the negligence per se claim should be dismissed.

## III.   ALTERNATIVELY, THE MAJORITY OF ALLEGED VIOLATIONS OF FEDERAL MEDICAID LAW ARE UNSUPPORTED BY PLAUSIBLE FACTUAL ALLEGATIONS.

Even if Plaintiffs could bring state law claims based on noncompliance with federal Medicaid law, which they cannot, nearly all of their claims would still fail because they do not allege facts that would establish a violation of federal Medicaid law with respect to either Ms. Claflin or Ms. Johnson, with one limited exception: Plaintiffs' allegation that Ms. Claflin did not receive notice of her redetermination in violation of Sections 431.201, 431.210, 431.220.

This also dooms Plaintiffs' corresponding putative class claims because "a putative class action cannot proceed unless the named plaintiff can state a claim for relief as to himself." *Kamath v. Robert Bosch LLC*, 13-08540, 2014 U.S. Dist.

15

LEXIS 88298, at *13, n. 4 (C.D. Cal. June 26, 2014) (unpublished).

"[G]eneralized allegations of unnamed plaintiffs or putative class members" are insufficient. *Tatum v. Chrysler Grp. LLC*, No. 10- 4269, 2012 U.S. Dist. LEXIS 171746, at *11 (D.N.J. Dec. 3, 2012) (unpublished). That is, because Plaintiffs fail to plead viable individual claims, the corresponding putative class claims must be dismissed as well. *See Boyle v. Madigan*, 492 F.2d 1180, 1182 (9th Cir. 1974); *see also Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644, 658-59 (3d Cir. 1998).

### A. Plaintiffs' Claims Fail to the Extent They Are Based on Section 435.916(a)(2), (b) (2023).

Plaintiffs advance claims arising from the State's alleged failure to redetermine eligibility for certain enrollees "ex parte," *i.e.*, the State's alleged failure to reenroll individuals "without requiring information from the individual if able to do so based on reliable information contained in the individual's account or other more current information available to the agency," as required by Section 435.916(a)(2), (b) (2023). (*See* Doc. 1-1 at ¶¶ 100, 103, 109, 126.)

Plaintiffs fail to plead a violation of Section 435.916(a)-(b) because the Complaint does not allege any facts showing the State was "able to" "make a redetermination of eligibility" for Ms. Claflin or Ms. Johnson "based on reliable information contained in the individual's account or other more current information available to the agency." The Complaint does not even allege that the

16

State could or should have reenrolled Ms. Claflin ex parte, but instead relies on the allegation that the State did not need to gather any <u>financial</u> information about Ms. Johnson because she was eligible through a coverage group for which income is not relevant.  (Doc. 1-1 at ¶¶ 52-54).  However, the Complaint does not allege the State had the requisite information about Ms. Johnson's <u>state residency</u> to make a redetermination decision about Ms. Johnson, and state residency was an important eligibility requirement for Ms. Johnson and all other Medicaid applicants.  42 C.F.R. §§ 435.403, 435.956.  As CMS recently explained in an Informational Bulletin, state residency is an important eligibility requirement that States must enforce.[2]

Plaintiffs argue that federal law requires the State to redetermine ex parte the eligibility for all enrollees in the mandatory coverage groups in Section 1396a(a)(10)(A), without requiring additional information from those enrollees. (Doc. 1-1 at ¶¶ 53-54, 100.)  This argument misreads federal Medicaid law.  To begin with, ex parte eligibility is entirely a creature of regulation, *see* § 435.916; it is not required by any provision of the Medicaid Act.  Further, eligibility for the mandatory coverage groups depends in part on household income and/or other

---

[2] CMS, CMCS Informational Bulletin, Ensuring Medicaid Eligibility Integrity by Addressing Concurrent Medicaid and Children's Health Insurance Program (CHIP) Enrollment Across States (Nov. 6, 2025), https://www.medicaid.gov/federal-policy-guidance/downloads/cib11062025.pdf.

factors that may change year-to-year.  *See* § 1396a(a)(10)(A)(i); § 435.100–435.172.  For example, eligibility for the mandatory pregnant women and the mandatory children groups depends on household income (which depends in part on household size) and state residency, among other things.  *See* § 1396a(a)(10)(A)(i)(III)-(VI); 42 C.F.R. §§ 435.116, 435.118, 435.603.  The agency may not be able to make an ex parte determination for enrollees originally eligible through these mandatory coverage groups because relevant information (*e.g.*, information about changes in income, household size, or state residency) is *not* "contained in the individual's account or other more current information available to the agency," § 435.916(a)(2) (2023).

**B.    Plaintiffs' Claims Fail to the Extent They Are Based on Section 435.908(a).**

Plaintiffs advance claims arising from alleged noncompliance with Section 435.908(a) (*see* Doc. 1-1 at ¶¶ 100, 110, 122, 127), which requires the agency to "provide assistance to any individual seeking help with the application or renewal process in person, over the telephone, and online, and in a manner that is accessible to individuals with disabilities and those who are limited English proficient . . . ", § 435.908(a).

The Complaint does not allege that the State failed to "provide assistance" to Ms. Claflin or Ms. Johnson after they "s[ought] help with the application or renewal process."  Plaintiffs do allege that a customer service representative told

18

Ms. Johnson that there was "nothing [they] could do" to expedite the processing of her application (Doc. 1-1 at ¶ 77), but Section 435.908(a) does not require States to expedite applications, *see* § 435.908(a). The Complaint also alleges deficiencies in the assistance provided to putative class members through Montana Public Assistance HelpLine. (*See* Doc. 1-1 at ¶¶ 55-62.) However, Plaintiffs do not allege that any of those purported deficiencies effected Ms. Claflin or Ms. Johnson. Accordingly, Plaintiffs claims should be dismissed to the extent they rely on alleged violations of Section 435.908(a).

**C.** **Plaintiffs' Claims Fail to the Extent They Are Based on Section 1396a(a)(10)(A) and Its Implementing Regulations.**

Plaintiffs advance claims arising from alleged noncompliance with Section 1396a(a)(10)(A) and its implementing regulations, Sections 435.100–435.172, 435.603. (Doc. 1-1 at ¶¶ 100, 107, 125.) Section 1396a(a)(10)(A) provides that Montana's "State plan for medical assistance must . . . provide . . . for making medical assistance available" to certain specific categories of individuals. Neither Section 1396a(a)(10)(A) nor its implementing regulations require states to actually enroll all individuals in these specified categories in Medicaid: even if an individual meets the criteria for one of these mandatory coverage groups, a state need not enroll that individual if the individual does not apply for Medicaid or if

19

the state does not have the requisite information to confirm the individual's Medicaid eligibility.[3]

Ms. Johnson alleges she met the criteria for one of the mandatory coverage groups, but does not allege facts that show that the State possessed the requisite information about Ms. Johnson (such has state residency) to find her eligible for any of the mandatory coverage groups set forth in Section 1396a(a)(10)(A).

Plaintiffs do allege the State failed to provide Ms. Claflin with the redetermination packet and failed to redetermine Ms. Johnson's eligibility ex parte. (Doc. 1-1 at ¶¶ 75, 84.)  However, nothing in Section 1396a(a)(10)(A) or its implementing regulations speaks to the State's obligations to provide notice to individuals of their Medicaid redetermination or to conduct redeterminations ex parte; rather, a State's obligations to provide notice and to conduct ex parte

---

[3] *See, e.g.*, § 435.916(b)(2)(iii) (contemplating that coverage may be "terminated for failure to submit the renewal form or necessary information in accordance with the application time standards at § 435.912(c)(3)"); 42 C.F.R. § 435.919 (procedures for the state to request, verify, and evaluate information about an individual's change in circumstances for eligibility purposes); 42 C.F.R. Part 435, Subpart J (procedures for the state to request, verify, and evaluate information about an individual's eligibility); CMS, CMCS Informational Bulletin, Medicaid and Children's Health Insurance Program (CHIP) Renewal Requirements, at 6 (Dec. 4, 2020), https://www.medicaid.gov/federal-policy-guidance/downloads/cib120420.pdf (explaining that eligibility can be terminate when "the beneficiary does not timely provide requested information that is needed to make a determination").

redeterminations are governed by other regulations, *see, e.g.*, Part 431, Subpart E; § 435.916.

### D.    Plaintiffs' Claims Fail to the Extent They Are Based on Section 435.930(b).

Plaintiffs advance claims based on Section 435.930(b) (Doc. 1-1 at ¶¶ 100, 111-12, 122, 128-29), which requires state Medicaid agencies to "[c]ontinue to furnish Medicaid regularly to all eligible individuals until they are found to be ineligible." § 435.930(b).  An individual may be "found ineligible" for any number of reasons, including because the individual no longer meets the eligibility criteria or does not submit certain required information to the State, *see* note 3, *supra*.

Plaintiffs do not allege that the State disenrolled Ms. Claflin and Ms. Johnson before "they [were] found to be ineligible," § 435.930(b).  Instead, Plaintiffs allege that the State disenrolled Ms. Claflin and Ms. Johnson *after* finding them ineligible for failing to provide the State with all information it was seeking to conduct their redeterminations.  (Doc. 1-1 ¶¶ 73-85.)  Plaintiffs argue that the State should not have requested information from Ms. Johnson about her eligibility and that the State failed to provide Ms. Claflin with notice of her redetermination (*id.* at ¶¶ 75, 84), but Section 435.930(b) does not require ex parte determinations or notice of redeterminations, *see* § 435.930(b).  Rather, as explained above, a State's obligations to conduct ex parte redeterminations and

21

provide notice of redeterminations are governed by Part 431, Subpart E and Section 435.916.

### E.    Plaintiffs' Claims Fail to the Extent They Are Based on Sections 435.916(f)(1) (2023) and 435.911(c)(2).

Plaintiffs advance claims arising from alleged noncompliance with Sections 435.916(f)(1) (2023) and 435.911(c)(2) (*see* Doc. 1-1 at ¶¶ 100, 107, 122, 125), which provide that States should consider all bases of eligibility prior to finding an individual ineligible for Medicaid.  However, Plaintiffs do not allege that the State failed to consider all bases for eligibility for either Ms. Claflin or Ms. Johnson.  Plaintiffs' claims should be dismissed to the extent they rely on alleged violations of Sections 435.916(f)(1) (2023) and 435.911(c)(2).

### IV.    THE DECLARATORY JUDGMENT CLAIMS (COUNTS FOUR AND FIVE) SHOULD BE DISMISSED BECAUSE THEY ASK THE COURT TO DECLARE THE STATE, IN THE PAST, VIOLATED STATUTES THAT DO NOT GIVE RISE TO A PRIVATE RIGHT OF ACTION.

Plaintiffs seek a declaration under Montana's Uniform Declaratory Judgments Act ("UDJA"), Mont. Code Ann. §§ 27-8-101, *et seq*., that "Defendants' acts and omissions described above constitute violations of the Medicaid Act, 42 U.S.C. §§ 1396-1396w-7, and implementing regulations."  (Doc. 1-1 at ¶ 124.)  In other words, Plaintiffs ask the Court to declare the State committed federal statutory violations in the past—statutory violations that would

not give rise to any cause of action themselves.  This constitutes an improper use of the UDJA.

> **A.     The Statutes and Regulations Upon Which the Declaratory Judgment Claim Is Based Do Not Provide for a Private Cause of Action.**

The UDJA allows courts to declare rights, status, and other legal relations, even in the absence of further relief being sought.  Mont. Code Ann. § 27-8-201, 27-8-202.  However, the UDJA is not intended to create new substantive rights or remedies.  *See Brisendine v. Dep't of Commerce,* 833 P.2d 1019, 1021 (Mont. 1992); *Lyman Creek, LLC v. City of Bozeman,* 450 P.3d 872, ¶¶ 20-26 (Mont. 2019); *see also Siino v. Foresters Life Ins. & Annuity Co.,* 133 F.4th 936, 945 (9th Cir. 2025) (holding the federal Declaratory Judgment Act is "a purely remedial statute that provides an affirmative remedy only when a cause of action otherwise exists" (internal cites and quotations omitted)).

The alleged statutory violations Plaintiffs ask the Court to declare arise solely under federal statutes or regulations, and those statutes and regulations do not provide a private right of action.  *See* Section I(A), *supra*.  Declaratory relief should not be used to circumvent the legislative intent of a statute in this manner. *Lyman*, ¶ 26.

23

**B.    Plaintiffs' Request for Declaratory Relief is Non-Justiciable.**

"It is necessary for a justiciable controversy to exist before a court may exercise jurisdiction under the UDJA." *Murray v. Motl*, 354 P.3d 197, ¶ 12 (Mont. 2015) (internal quotation marks omitted).  Federal law imposes the same requirement under the federal Declaratory Judgment Act.  *Shell Gulf of Mex. Inc. v. Ctr. for Biological Diversity, Inc.,* 771 F.3d 632, 635 (9th Cir. 2014) (noting the DJA does not expand federal courts' jurisdiction beyond justiciable controversies). Important here, "[t]he UDJA does not license litigants to fish in judicial ponds for legal advice" and courts "have no jurisdiction to determine matters which are purely speculative, enter anticipatory judgments, deal with theoretical problems, give advisory opinions, answer moot questions, adjudicate academic matters, or provide for contingencies which hereafter arise, or give abstract opinions." *Kageco Orchards, Ltd. Liab. Co. v. Mont. DOT,* 528 P.3d 1097, 1102 (Mont. 2023); *see also, e.g., Ross v. Alaska,* 189 F.3d 1107, 1114 (9th Cir. 1999) ("Where the plaintiffs seek declaratory and injunctive relief, the relevant inquiry is whether there is a 'substantial controversy . . . of *sufficient immediacy and reality* to warrant the issuance of a declaratory judgment.'" (emphasis original)).

The U.S. Supreme Court has made clear that federal courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." *Spencer v. Kemna*, 523 U.S. 1, 18 (1998).  Thus, "in

24

the context of an action for declaratory relief, a plaintiff must be seeking more than a retrospective opinion that he was wrongly harmed by the defendant." *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011) (citing *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977)).  Put another way, "a declaratory judgment merely adjudicating past violations of federal law—as opposed to continuing or future violations of federal law—is not an appropriate exercise of federal jurisdiction."  *See Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 868 (9th Cir. 2017); *see also Trinh v. Homan*, 466 F. Supp. 3d 1077, 1095 (C.D. Cal. 2020) ("Because the declaration Petitioners seek would be nothing more than a retrospective opinion that their rights were violated, the Court cannot issue it.") (citing cases); *Jevons v. Inslee*, No. 22-35050, 2023 U.S. App. LEXIS 20453, at *1-2 (9th Cir. Aug. 8, 2023) ("Without a live controversy for us to resolve, a bare declaratory judgment that Defendants violated the Constitution *in the past* would amount to an impermissible advisory opinion." (emphasis original)); *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam) (to overcome mootness there "must be a 'reasonable expectation' or a "demonstrated possibility" that some controversy will recur involving the same complaining party").

Plaintiffs had their Medicaid benefits reinstated, retroactively, long ago.  To the extent their temporary disenrollments were in violation of federal law, those violations occurred in the past and were rendered moot when Plaintiffs were

25

reenrolled. *See id*. A bare declaratory judgment that the State violated the federal statutes in the past would amount to an impermissible advisory opinion. *Id*. The fact that there is no live controversy of "sufficient immediacy and reality" to warrant declaratory relief constitutes another, independent basis to dismiss the declaratory judgment claim.

### C.      Alternatively, the Court Should Decline Jurisdiction Over Plaintiffs' Substitute Claim for Declaratory Relief.

If the Court determines Plaintiffs' claims for negligence, negligence per se, or constitutional tort survive the State's motion to dismiss, the declaratory judgment claim should be dismissed for an additional reason: It is an improper duplicative substitute for Plaintiffs' regular causes of action.

A request for declaratory relief under the UDJA should not be disguised as a substitute for regular causes of action for damages. *Murray*, ¶¶ 11, 15. Federal law is in accord: "Courts have recognized that where 'a party has a fully matured cause of action for money, the party must seek the remedy of damages, and not pursue a declaratory relief claim.'" *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1189 (E.D. Cal. 2010) (citing cases). "[A] declaratory relief claim should not be used as a superfluous 'second cause of action for the determination of identical issues' subsumed within the first." *Id*. (citing cases); *see also ISE Entm't Corp. v. Longarzo*, No. CV 17-9132-MWF(JCx), 2018 LX 19231, at *30-31 (C.D. Cal. Feb. 2, 2018) ("[A] federal court may decline to consider a claim for

26

declaratory relief where the substantive lawsuit will resolve the issues raised by the claim for declaratory relief.").

Count Four should be dismissed for this additional reason if Plaintiffs' "regular actions" for money damages survive. *Murray*, ¶ 11.

## V. ALTERNATIVELY, THE CONSTITUTIONAL TORT CLAIM (COUNT THREE) SHOULD BE DISMISSED IF ALTERNATIVE REMEDIES EXIST UNDER STATE LAW.

In a cause of action entitled "Constitutional Tort—Procedural Due Process," Plaintiffs allege the State violated their rights under Article II, § 17 of the Montana Constitution. (Doc. 1-1 at ¶ 117.) If the Court determines Plaintiffs have stated other viable state law claims (which it should not), their claim under the Montana Constitution should be dismissed on grounds that, in the Court's view, "adequate remedies exist under statutory or common law." *Montana v. Zapata*, No. CV-21-79-GF-BMM, 2023 U.S. Dist. LEXIS 36040, at *20 (D. Mont. Mar. 3, 2023); *Seymour v. Contreraz*, 2023 U.S. Dist. LEXIS 148582 (D. Mont. Aug. 23, 2023); *Estate of Frazier v. Miller*, 484 P.3d 912, ¶ 28 (Mont. 2021).

Because "courts should avoid constitutional issues wherever possible," *Sunburst Sch. Dist. No. 2 v. Texaco, Inc.*, 165 P.3d 1079, ¶ 62 (Mont. 2007), Plaintiffs have the burden to prove state law remedies are inadequate, *Tally Bissell Neighbors, Inc. v. Eyrie Shotgun Ranch, Ltd. Liab. Co.*, 228 P.3d 1134, ¶ 48 (Mont. 2010). "The availability of an alternative remedy, rather than the ultimate success

on the merits, precludes a distinct constitutional cause of action." *Zapata*, *21 (quoting *Tally Bissell*, ¶ 48).

Plaintiffs seek alternative remedies in tort (negligence) and under the UDJA to vindicate the State's alleged violations. All of Plaintiffs' claims are based on the very same operative facts—the State's alleged "violations of the Medicaid Act and implementing regulations." (Doc. 1-1 at ¶¶ 122.) If their alternative state law claims are determined to be viable, the constitutional tort claim should be dismissed because the other claims "essentially encompass the same standards a jury would use in consideration of the . . . proffered constitutional tort claim." *Est. of Frazier*, ¶¶ 27-28; *Tally Bissell*, ¶ 48; *Zapata*, at *20-21; *Seymour,* at *6-8.

## VI.    DPHHS SHOULD BE DISMISSED AS A SEPARATE DEFENDANT.

The claims against DPHHS should be dismissed because the State of Montana is the sole proper defendant. Mont. Code Ann. § 2-9-101(7) (defining the "State" as "the state of Montana or any office, <u>department</u>, agency, authority, commission, board, institution, hospital, college, university, or other instrumentality of the state" (emphasis added)); Mont. Code Ann. § 2-9-313 (for claims asserted under the Montana Tort Claims Act, "the <u>state</u> must be named the defendant. . . ." (emphasis added)).

## CONCLUSION

For the reasons stated, the State's Motion to Dismiss should be granted.

DATED: May 21, 2026

BOONE KARLBERG P.C.

/s/ Thomas J. Leonard
Thomas J. Leonard
*Attorneys for Defendants State of Montana
and Montana Department of Public Health
and Human Services*

29

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(d)(2)(E), Local Rules of the United States District Court, District of Montana, I hereby certify that the textual portion of the foregoing brief uses a proportionally spaced Times New Roman typeface of 14 points, is double-spaced, and contains approximately 6,463 words, excluding the parts of the brief exempted by L.R.7.1(d)(2)(E).

DATED: May 21, 2026

BOONE KARLBERG P.C.

/s/ Thomas J. Leonard
Thomas J. Leonard
*Attorneys for Defendants State of Montana
and Montana Department of Public Health
and Human Services*

30