Raph Graybill
Rachel Parker
GRAYBILL LAW FIRM, PC
300 4th Street North
PO Box 3586
Great Falls, MT 59403
(406) 452-8566
raph@graybilllawfirm.com
rachel@graybilllawfirm.com

Molly Danahy
Andres Haladay
UPPER SEVEN LAW
P.O. Box 31
Helena, MT 59624
(406) 998-6067
molly@uppersevenlaw.com
andres@uppersevenlaw.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

| | |
|---|---|
| ZOE JOHNSON; ANNETTE CLAFLIN; for themselves and all others similarly situated,<br>*Plaintiffs*,<br>v.<br>STATE OF MONTANA; MONTANA DEPARTMENT OF PUBLIC HEALTH AND HUMAN SERVICES,<br>*Defendants*. | Cause No. 9:26-cv-00071-DLC<br><br>**AMENDED CLASS ACTION COMPLAINT & JURY DEMAND** |

## INTRODUCTION

1. This is a proposed class action related to the State of Montana's negligent disenrollment of tens of thousands of Montanans from Montana's Medicaid program, which resulted in substantial losses to class members including foregone essential medical treatment. Specifically, this action is brought on behalf of the thousands of Montanans who either received no notice of their impending disenrollment (contrary to law), or who were permanently eligible for Medicaid and never should have been considered for disenrollment in the first place (also contrary to law).

2. Between April 2023 and early 2024, the Montana Department of Public Health and Human Services ("DPHHS" or "the Department"), through its decisions and negligent administration, kicked roughly 135,000 people—more than 10% of Montana's population—off Medicaid, leaving thousands of Montanans uninsured and burdened by debt.




3. DPHHS eliminated these individuals' health insurance coverage through a process called "redetermination." For most enrollees, Medicaid eligibility is typically "redetermined" annually to ensure that they continue qualifying for Medicaid. The federal government paused Medicaid redeterminations during the Covid-19 public health emergency. When Congress lifted the federal pause in March 2023, states resumed redeterminations and began "unwinding" their Medicaid rolls.

4. Montana's administration of the unwinding process was unusually catastrophic—an outlier among states. According to a Kaiser Family Foundation (KFF) report, Montana had the largest percentage decrease (57%) in Medicaid enrollment of any state between April 2023 and June 2024. *An Examination of Medicaid Renewal Outcomes and Enrollment Changes at the End of the Unwinding*,

Jennifer Tolbert and Bradley Corallo, September 18, 2024, last visited December 16, 2025 ("KFF Report").[1] The gap in Medicaid coverages caused by this haphazard process persists to this day. In April 2023, Montana had 302,812 total Medicaid enrollees but as of November 2025, the latest month for which data is available, the cumulative enrollment was only 210,834–over 30% less than it was prior to unwinding and well below pre-COVID enrollment levels. *Mont. Medicaid Enrollment Dashboard*, DPHHS.mt.gov (Dec. 9, 2025).[2]

5. Of the 57% of people disenrolled between April 2023 and June 2024, only 32% were actually deemed ineligible for the Medicaid program. The remaining 68% were disenrolled for "procedural" reasons. *KFF Report*. Those who were disenrolled often had no reasonable opportunity to retain their benefits. The Department required completion of a redetermination form within 30 days to avoid losing coverage. But many never received the form, received it after the deadline already passed, or timely completed it and still lost coverage. Others should have never been subjected to the redetermination process because they belonged to "mandatory eligibility" populations and thus automatically qualified for Medicaid.

6. Plaintiffs Zoe Johnson and Annette Claflin are among those whom the Department negligently disenrolled from Medicaid.

---

[1] *Available at* https://www.kff.org/medicaid/an-examination-of-medicaid-renewal-outcomes-and-enrollment-changes-at-the-end-of-the-unwinding/

[2] *Available at* https://dphhs.mt.gov/InteractiveDashboards/medicaidenrollmentdashboard (last visited Apr. 10, 2025).

7. Due to the Department's negligent administration of the unwinding, Plaintiffs and thousands of other similarly situated Montanans have suffered and continue to suffer economic and non-economic harm as a direct result of being negligently disenrolled from Medicaid.

**PARTIES**

8. Zoe Johnson is a 21-year-old resident of Missoula, Montana.

9. Annette Claflin is a 56-year-old resident of Plains, Montana.

10. The named Plaintiffs bring this action on behalf of a class of all persons similarly situated. The Plaintiff Class is defined as follows:

> All eligible persons whom DPHHS disenrolled from Medicaid for procedural reasons between April 2023 and the present. The class excludes individuals who requested withdrawal from Medicaid.

11. Plaintiff Claflin also brings this action on behalf of a subclass, referred to hereafter as the "Lack of Notice Subclass." The Lack of Notice Subclass is defined as follows:

> All persons whom DPHHS disenrolled from Medicaid for procedural reasons, between April 2023 and the present, and who lost coverage without adequate notice. The class excludes individuals who requested withdrawal from Medicaid.

12. Plaintiff Zoe Johnson also brings this action on behalf of a subclass, referred to hereafter as the "Mandatory Eligibility Subclass." The Mandatory Eligibility Subclass is defined as follows:

> All persons whom DPHHS disenrolled from Medicaid for procedural reasons, between April 2023 and the present, and who remained categorically eligible for Medicaid based on membership in a mandatory population group, independent of their income. The class excludes individuals who requested withdrawal from Medicaid.

13. Defendant State of Montana is a government entity subject to suit.

14. Defendant the Montana Department of Public Health and Human Services ("DPHHS") is an agency of the State of Montana. DPHHS is exclusively responsible for administering and supervising Montana's Medicaid program. *See* § 53-6-101(1), MCA.

**JURISDICTION & VENUE**

15. Article VII, Section 4, of the Montana Constitution and § 3-5-302(3), MCA, vest this Court with jurisdiction.

16. This Court has jurisdiction to grant declaratory relief pursuant to §§ 27-8-201 et seq., MCA.

17. Venue is proper in this judicial district pursuant to §§ 25-2-125, -126(1), MCA.

**ALLEGATIONS**

**Montana's Administration of Medicaid**

18. Medicaid is a cooperative federal-state medical assistance program administered in Montana by DPHHS. In Montana, DPHHS is the single state agency that administers and supervises the state Medicaid program. *See* § 53-6-101(1), MCA.

19. Montana law requires DPHHS to cover certain mandatory population groups, which include, *inter alia*, (i) individuals receiving Supplemental Security Income ("SSI"), and (ii) individuals between the ages of 18 and 26 who were in foster care until age 18 and enrolled in Medicaid when they aged out of the foster care system. Section 53-6-131, MCA.

20. Individuals enrolled in Medicaid under a mandatory eligibility group are entitled to Medicaid regardless of their income.

21. Former foster care enrollees qualify for Medicaid automatically, and Montana cannot consider their income or assets for purposes of eligibility.

22. For individuals who do not belong to mandatory eligibility groups, Medicaid enrollment is primarily based on their Modified Adjusted Gross Income ("MAGI").

23. Once DPHHS enrolls an individual in its Medicaid program, it must reassess—or "redetermine"—their continued eligibility. For most enrollees, "redetermination" occurs once every 12 months.

24. When making a redetermination, DPHHS must first attempt to verify an enrollee's eligibility based on information already available in the existing case file." This process is known as "ex parte" redetermination or "auto-renewal." *See* Montana Medicaid Manual 103-1, 1502-1; Mont. Admin. R. 37.82.101 (adopting and incorporating by reference the Medicaid manuals).

25. When the Department is unable to verify an enrollee's Medicaid eligibility ex parte, it requests additional information from the enrollee. DPHHS does so using a redetermination packet, which is an information request sent to the enrollee.

26. The information requested in the redetermination packet includes the following: contact information; information about the household's tax filers and dependents; the household members' current health insurance coverage information; the household members' work information, including hours worked and income; information about income from other sources; information about assets, including

bank accounts, property, and investments; and information about the household's expenses.

27. The redetermination packet primarily seeks financial information from enrollees so that the Department can determine whether they still qualify for Medicaid under the MAGI rules.

28. DPHHS must continue to provide Medicaid to eligible individuals until they are found to be ineligible, and must assist individuals seeking help with the redetermination process.

29. When conducting a redetermination, DPHHS must consider all bases of eligibility prior to making a determination of ineligibility by evaluating an individual under all eligibility groups, even while requesting additional information.

30. Before disenrolling a Medicaid enrollee, DPHHS must provide notice and an opportunity to be heard.

**Mass Disenrollment in Montana**

31. The federal government suspended the Medicaid redetermination requirement in 2020, offering significantly enhanced funding to states who paused redeterminations amidst the COVID-19 public health emergency.

32. After a three-year pause on Medicaid redeterminations, Congress directed states to restart the redetermination process and begin "unwinding" their Medicaid rolls in 2023.

33. Starting in April 2023, states had up to twelve months to initiate the unwinding and fourteen months to complete the redeterminations.

34. Montana had a cumulative 30% decrease[3] in Medicaid enrollment between March 2023 and May 2024—the third largest decrease in any state. *KFF Report*. While most states' Medicaid enrollment increased between February 2020 and May 2024 despite redetermination, Montana was one of only four states whose cumulative enrollment numbers declined; and among those eight states, Montana had the second largest decrease in cumulative enrollment:

Figure 5

**Cumulative Percent Change in Total Medicaid/CHIP Enrollment from February 2020 through May 2024**

Click on the buttons below to see enrollment breakouts:

Total Enrollment | Child Enrollment | Adult Enrollment




Note: May 2024 data are preliminary and subject to change; February 2020 (baseline) data are based on updated enrollment reports.

Source: KFF analysis of CMS, Medicaid & CHIP: Monthly Application and Eligibility Reports, last updated August 30, 2024.

KFF

*Id.*

[3] This figure includes individuals who gained coverage during this period (hence, "cumulative").

35. The Department's Medicaid Enrollment Dashboard reports that 324,727 people were enrolled in some form of Medicaid in Montana in April 2023. *Mont. Medicaid Enrollment Dashboard*, DPHHS.mt.gov (last visited May 7, 2025).[4] By September 2025, the number of Medicaid enrollees had fallen to 210,834. *Id.*

36. Montana's decrease in child Medicaid enrollment is by far the largest in the country. During that same period, the total number of children enrolled in Traditional Medicaid and Healthy Montana Kids dropped by 39,197 (from 132,269 children to 93,072 children). *Id.*

37. Most alarmingly, according to DPHHS's own data, between April 2023 and January 2024, only 31.57% of disenrollments were substantive—meaning that only 31.57% of disenrollments were due to the enrollee being determined ineligible for Medicaid. The remaining disenrollments were "procedural," and the most common reason was "[f]ailure to provide requested information":

[4] *Available at* https://dphhs.mt.gov/InteractiveDashboards/medicaidenrollmentdashboard.




*Cumulative Closure Reasons*, DPHHS.mt.gov, last visited May 2, 2025.[5]

38. As shown above, the Department estimates that between April 2023 and May 2024, it disenrolled 92,762 persons for procedural reasons—not because those individuals did not qualify for Medicaid but because they either "fail[ed] to provide requested information," failed to update their address with the Department, or "other reason[s]." *Id.*

[5] *Available at* https://tableau-ext.mt.gov/t/HHS/views/PHE_MARedetermination/RedeterminationStatus?%3Aembed=y&%3Asid=1D0CA582CB6A467FA5CCF0446988A9A7-1%3A0&%3Adisplay_spinner=no&%3AshowAppBanner=false&%3Atoolbar=yes&%3Aembed_code_version=3&%3AloadOrderID=0&%3Atabs=no.

39. Montana's unwinding process was so deficient compared to other states that it drew the attention of the United States Department of Health & Human Services Centers for Medicare & Medicaid Services ("CMS"). On August 9, 2023, CMS sent a letter to DPHHS rebuking the Department for the high percentage of procedural disenrollments. Ex.1, *Ltr. from CMS to Mike Randol, State Medicaid Director, DPHHS* (Aug. 9, 2023) ("CMS Letter").

40. CMS's 2023 letter stated that 36% of Montana's May 2023 redeterminations resulted in procedural disenrollment, "rais[ing] concerns that eligible individuals, including children, may be losing coverage." *Id.* at 3. The CMS letter also stated that Montana's "high rate of procedural terminations may indicate that beneficiaries may not be receiving notices, are unable to understand them, or are unable to submit their renewal through the required modalities." *Id.*

41. The CMS letter also highlighted deficiencies with the Department's Medicaid Helpline—the Department's customer service line for Medicaid—and the Department's failure to process new applications in compliance with the Medicaid Act's 45-day requirement.

42. DPHHS's unprecedented and uniquely high number of procedural disenrollments had several root causes.

**A. Negligent and Systemic Notice Deficiencies**

43. First, the Department failed to provide Montanans timely and adequate notice of the redeterminations.

44. There are two relevant notice periods. First, the Department was supposed to notify enrollees of the unwinding through an initial, pre-determination notice. Ex. 2, Sample Pre-determination Notice.

45. Annette Claflin and other Medicaid enrollees did not receive the pre-determination notice. *See* ¶¶ 84–85, *infra*.

46. Additionally, the notice was confusing and not reasonably calculated to inform Medicaid enrollees of the impending redetermination. Under a heading, "What do I need to do?," the letter states, "You need to report any changes that might affect your Medicaid coverage," but fails to explain when or how the enrollee should report those changes. *Id.* It instructs enrollees to report to the Department if they experienced any one of four changes: change of address; marriage or divorce; changes in makeup of household; and income changes. *Id.* at 1–2. It requires enrollees to "report these changes within 10 days," but it does not state when the 10-day period begins to run, what the triggering event for the timeline is, or how to report the changes. *Id.* at 2. Thus, the pre-determination notice would fail to inform a reasonable person whether they need to take any action pursuant to the letter and to adequately advise enrollees of the impending unwinding. The letter provides no guidance for enrollees who have no changes to report.

47. The second step is the Department's redetermination packet, which presupposes that enrollees would have already received the pre-determination notice. The Department aimed to complete redeterminations by mailing the redetermination packet to enrollees. Ex. 3, Sample Redetermination Packet.

48. Annette Claflin never received a redetermination packet; other enrollees received the packet when it was too late to comply with the deadline.

49. The redetermination packet itself is also confusing. The renewal packet states in large bold font, "Renew Your Benefits." *Id.* at 1. Directly underneath that, also in large font, it states, "You are currently receiving health coverage through Medicaid/Healthy Montana Kids." *Id.* Nowhere does the letter state why enrollees need to submit a renewal form. Nor does it communicate whether an enrollee needs to fill out the form.

**B. Negligent Failure to Administer Ex Parte Redeterminations**

50. Second, the Department failed to maintain coverage for individuals belonging to mandatory coverage groups and instead subjected those individuals to its chaotic redetermination process.

51. Individuals in mandatory coverage groups do not need to complete a redetermination packet because their coverage is not income-dependent; they qualify for Medicaid automatically. DPHHS maintains information identifying such enrollees and ordinarily renews coverage for those individuals without requiring income-related information from them.

52. The Department negligently administered ex parte redeterminations. Plaintiff Zoe Johnson and other members of the mandatory coverage groups subclass belonged to a mandatory eligibility group, but the Department nonetheless disenrolled them.

**C. Negligent Assistance with the Redeterminations**

53. Third, DPHHS negligently failed to provide enrollees adequate assistance with the redeterminations.

54. The primary method of contacting DPHHS during the unwinding was the Montana Public Assistance HelpLine number, 1-888-706-1535 ("HelpLine").

55. The Department encouraged applicants to call the HelpLine in every correspondence.

56. The HelpLine was understaffed, plagued with long wait times, and prone to disconnect callers—it was effectively unusable.

57. In 2022, DPHHS hired Public Consulting Group ("PCG") to process MAGI Medicaid renewals. PCG's services included "[f]ollowing existing DPHHS business processes . . . to complete all renewal tasks up to and including renewal determinations for MAGI Medicaid/CHIP cases in accordance with applicable Federal and State policies and procedures." Ex. 4, PCG Contract. The agreement also required PCG to inform clients of any documents required for their application and to operate a call center, among other responsibilities. *Id.*

58. Beginning on May 5, 2023, PCG supplied DPHHS with weekly status reports containing project updates. Until October 6, 2023, these status reports tracked various monthly metrics related to the call center.

59. For the months of May, August, and September 2023, the 'abandon rate'—defined in PCG's contract as a call disconnected by a customer awaiting a live agent—exceeded the 10% upper bound mandated by PCG's contract. *Id.* According to CMS,

this rate may be even higher. In its August 9th letter to DPHHS, it expressed that it had "concerns that [DPHHS's] average call center wait time and abandonment rate [were] impeding equitable access to assistance and the ability for people to apply for or renew Medicaid and CHIP coverage by phone and may indicate potential non-compliance with federal requirements." *CMS Letter*, at 1–2. The letter indicated that the average call center wait time on the Medicaid Helpline was 42 minutes and that the average call abandonment rate was 40%. *Id.* at 1. CMS reported that Montana had one of the highest rates of call abandonment and one of the highest average call center wait times nationwide. *Medicaid & CHIP Unwinding Operations Snapshot*, Medicaid.gov (July 2023).[6]

60. As of May 2025, Montana's call wait time still averaged 22 minutes and the abandonment rate was 33%.

**E. Montana's Policy Choice to Maximize Disenrollments**

61. Fourth, the State's policy approach to the unwinding was to slash its Medicaid rolls as quickly as possible, without regard for the catastrophic consequences.

62. Although states had up to twelve months to initiate the unwinding and up to fourteen months to complete the unwinding, DPHHS elected to complete the redeterminations in only ten months, stating that "processing redeterminations expediently is in the best interest of Medicaid members and Montana citizens."

---

[6] *Available at* https://www.medicaid.gov/resources-for-states/downloads/medicaid-chip-unwinding-oper-snap-april2023-07072023.pdf.

Austin Amestoy, *What Montanans Need to Know About Medicaid Eligibility & Redetermination*, Mont. Public Radio (Apr. 3, 2023).[7]

63. Brereton stated in an interim Health and Human Services Committee hearing that the Department was "working through [the redeterminations] as quickly as possible." Mara Silvers, *Health Dept. Shares Medicaid Disenrollment Numbers for Children, Seniors, Native Americans*, Mont. Free Press (Mar. 13, 2024).[8]

64. The Governor's office released a statement in April 2024, stating that the Medicaid program was "overburdened . . . by . . . folks who are ineligible on the rolls and hav[e] Montana taxpayers foot[ing] the bill. Redetermination is working as intended: people who are ineligible for Medicaid are no longer on it." Jonathon Ambarian, *Mont. Democrats Hold News Conference on Medicaid Redetermination Impacts*, KTVH (Apr. 2, 2024).[9]

65. DPHHS also issued a statement in March 2024: "Let's be honest: opponents to Medicaid redetermination want Montana taxpayers to continue footing the bill for individuals ineligible for Medicaid. . . . [T]he Department remains committed to protecting the taxpayer-funded Medicaid program for eligible Montanans who need

---

[7] *Available at* https://www.ypradio.org/health/2023-04-03/what-you-need-to-know-about-medicaid-eligibility-and-redetermination.
[8] *Available at* https://montanafreepress.org/2024/03/13/montana-shares-medicaid-disenrollment-numbers-for-children-seniors-native-americans/.
[9] *Available at* https://www.ktvh.com/news/montana-democrats-hold-news-conference-on-medicaid-redetermination-impacts.

it most." Darrell Ehrlick, *Montanans Losing Ins. Much Faster than Anticipated*, Daily Montanan (Mar. 13, 2024).[10]

66. Regarding the high number of procedural disenrollments, the Department shifted the blame to individual enrollees, with their director of communications stating, "There are a number of reasons why individuals may choose to not return their redetermination packet . . . and DPHHS has no way of knowing what those reasons are." Mara Silvers, *More Montanans Lose Medicaid Coverage as Reevaluations Continue*, Mont. Free Press (July 24, 2023).[11]

67. The State chose to approach the unwinding from the viewpoint that Montanans were taking advantage of the Medicaid program and thus aimed to disenroll masses of people within a short timeframe.

68. The State's policy choice related to the unwinding contributed to and caused its negligent administration of the redeterminations.

**Statement of Facts as to the Named Plaintiffs**

**A. Zoe Johnson**

69. Plaintiff Johnson is a 21-year-old former foster youth from Missoula, Montana. When Johnson was 10 years old, the DPHHS Child and Family Services ("CFS") division removed her from her biological mother's custody, and Johnson spent the rest of her childhood years in foster care. Johnson's biological father is deceased.

---

[10] *Available at* https://dailymontanan.com/2024/03/13/montanans-losing-insurance-much-faster-than-anticipated/.
[11] *Available at* https://montanafreepress.org/2023/07/24/thousands-of-montanans-lose-medicaid-coverage-in-may/.

Between the ages of 10 and 18, Johnson lived in over 35 different placements, including youth group homes, residential facilities, foster family placements, individual placements, and respite care, all over Montana. During her childhood, Johnson never lived in a single placement for more than nine months. Johnson attended high school in Missoula, Stevensville, Hamilton, Miles City, and Florence, Montana.

70. Johnson was enrolled in Medicaid continuously between the ages of 10 and 18. When she turned 18 in 2022, Johnson aged out of the foster care system.

71. As a former foster youth between the ages of 18 and 26, Johnson automatically qualifies for Medicaid and should not be subjected to the redetermination process. The Department must renew her coverage ex parte. Sometime in October 2024, Johnson tried filling her prescriptions at her pharmacy and learned that she did not have Medicaid. Johnson had received no prior notice of the disenrollment. She never experienced interruptions in her health insurance coverage prior to October 2024.

72. Johnson has been diagnosed with a mood disorder, depression, and a traumatic brain injury. At the time that she lost her Medicaid, she was prescribed Seroquel, Lexapro, and Trazodone. Johnson was not able to stop taking her Seroquel because the withdrawal symptoms cause severe illness and can require hospitalization. Johnson paid for her Seroquel out-of-pocket while she was uninsured. She discontinued her Lexapro and Trazodone because she could not afford to pay for the medication. Johnson also was unable to attend her therapy appointments and case management services without Medicaid.

73. After she lost coverage, Johnson's former foster care parent assisted her with a new Medicaid application, but the Department did not process it in a timely manner. Johnson visited her local OPA office, and the customer service representative told her that they were "really far behind" and that there was "nothing [they] could do about it."

74. The Department did not reenroll Johnson in Medicaid until late March 2025, and Johnson would not have been able to regain coverage without assistance from a former foster parent and from her transitional living services worker.

75. Johnson suffered damages as a result of Defendants' negligence, including economic damages (including but not limited to out-of-pocket costs for medical treatment) and non-economic damages (including but not limited to foregone medical treatment and its effects and the associated anxiety and distress).

**B. Annette Claflin**

76. Annette Claflin is a 56-year-old Medicaid enrollee with disabilities. Her only source of income is Social Security Disability Insurance ("SSDI")—which she has been on since 1987.

77. When she was nine months old, Claflin had bladder fistulas that were leaking into her kidneys. She had emergency surgery and has lived with an ostomy bag—a pouch that collects urine through a surgically created abdominal stoma—ever since. Claflin typically replaces her ostomy bags approximately once every three to four days.

78. Though Claflin is independent in many ways, twice per week she relies on a caregiver to help her shower and clean her home. Claflin was born with brain damage and a speech impediment, and she reads at a third or fourth grade level. She also suffers from chronic obstructive pulmonary disease and requires oxygen tanks.

79. She is prescribed the following medications, which she takes daily: omeprazole; potassium; hydrochlorothiazide; furosemide; atorvastatin; metoprolol; gabapentin; and duloxetine.

80. Claflin has been on Medicaid in Montana since 2015 and has not had any lapses in coverage until 2023. During the unwinding, Claflin unexpectedly and without notice lost Medicaid from December 1, 2023, until March 2024. Claflin only found out because her caregiver stopped visiting her. Claflin was unable to shower for a month before someone assisted her at no cost. She also was unable to afford new ostomy bags and oxygen tanks during this period. The reason for Claflin's disenrollment was failure to complete the redetermination packet on time. However, Claflin never received the packet. Through an advocate, she was able to reapply for Medicaid in January 2024, but her application was not approved until March 2024.

81. Claflin suffered damages as a result of Defendants' negligence, including economic damages (including but not limited to out-of-pocket costs for medical treatment) and non-economic damages (including but not limited to foregone medical treatment and its effects and the associated anxiety and distress).

## Class Allegations

82. Plaintiffs bring this action on behalf of themselves and all other persons similarly situated, pursuant to Montana Rule of Civil Procedure 23(a). Specifically, Plaintiffs bring this action on behalf of the following proposed class:

> All whom DPHHS disenrolled from Medicaid for procedural reasons between April 2023 and the present. The class excludes individuals who requested withdrawal from Medicaid.

83. Plaintiff Johnson also brings this action on behalf of the following subclass:

> <u>Mandatory Eligibility Subclass</u>: All persons whom DPHHS disenrolled from Medicaid for procedural reasons, between April 2023 and the present, and who remained categorically eligible for Medicaid based on membership in a mandatory population group, independent of their income. The class excludes individuals who requested withdrawal from Medicaid.

84. Plaintiff Claflin brings this action on behalf of the following subclass or alternative class:

> <u>Lack of Notice subclass</u>: All Montana residents whom DPHHS disenrolled from Medicaid for procedural reasons, between April 2023 and the present, and who lost coverage without adequate notice. The class excludes individuals who requested withdrawal from Medicaid.

85. Membership in the Plaintiff class and subclasses is so numerous that joinder of all members is impractical as there are, upon information and belief, nearly 100,000 Montanans whom the Department procedurally disenrolled from Medicaid between April 2023 and the present, many of whom belong to one or both subclasses.

86. Common questions of law exist, including what the Department's duty of care is when disenrolling Medicaid enrollees and whether the Department breached its duty of care in administering the redetermination process.

87. Common questions of fact exist, including whether the Department sent notices of disenrollment to the Plaintiffs, whether the notices were adequate, whether the Department afforded beneficiaries a reasonable opportunity to maintain coverage, whether the Department properly renewed coverage for categorically-eligible beneficiaries,, and whether the Department reenrolled Plaintiffs ex parte.

88. The claims and injuries of Plaintiffs are typical of the claims and injuries of other members of the Plaintiff Class because the Department procedurally disenrolled thousands of Medicaid enrollees, like Plaintiffs, causing them harm in the form of deprivation of health insurance, foregone medical treatments, and economic and noneconomic damages, among other injuries.

89. The claims and injuries of Plaintiff Johnson are typical of the Mandatory Coverage Subclass because the Department procedurally disenrolled thousands of Medicaid enrollees, like Johnson, while they belonged to mandatory eligibility categories and thus qualified for ex parte redetermination. These enrollees should have never been subjected to redetermination in the first place.

90. The claims and injuries of Claflin are typical of the Lack of Notice Subclass because the Department failed to give adequate notice to thousands of Medicaid enrollees, like Claflin prior to disenrolling them from Medicaid. These enrollees never received proper notice of their disenrollment and had no reasonable opportunity to retain their Medicaid coverage.

91. Plaintiffs will fairly and adequately represent and protect the interests of the Plaintiff Class, Mandatory Eligibility Subclass, and Lack of Notice Subclass because

Plaintiffs intend to prosecute this action vigorously to secure remedies for all Montanans belonging to the Plaintiff Class and subclasses.

92. Counsel of record for Plaintiffs are experienced in civil rights and class action litigation, including against Defendants State of Montana.

93. Certification of the Plaintiff Class, Mandatory Eligibility Subclass, and Lack of Notice Subclass is appropriate pursuant to Montana Rule of Civil Procedure 23.

## CLAIMS FOR RELIEF

### Count One
### Negligence

94. Plaintiffs incorporate herein all foregoing allegations as if set forth in full.

95. Defendants State of Montana, acting through DPHHS, owed Plaintiffs a duty of care to administer Medicaid redeterminations reasonably and in a prudent manner.

96. Defendants' duties included, *inter alia*, providing adequate notice of redeterminations and disenrollments; ensuring that individuals belonging to mandatory eligibility groups remained covered; reenrolling individuals belonging to mandatory coverage groups ex parte, without requiring them to complete redetermination paperwork; offering individuals a reasonable opportunity to comply with the redetermination requirements; offering individuals assistance with the redetermination paperwork; and maintaining a functional public assistance phone line for individuals to seek assistance with their redeterminations.

97. By their acts and omissions, Defendants breached their duty of care to Plaintiffs.

98. Defendants' breaches of their duties to Plaintiffs caused Plaintiffs to lose Medicaid coverage and to suffer injuries and economic harm.

99. Specifically, the Department should have reenrolled Johnson ex parte, without requiring her to complete any redetermination paperwork. The Department disenrolled Johnson despite her mandatory eligibility as a former foster youth between the ages of 18 and 26 who was on Medicaid when she aged out of foster care. Johnson had no reasonable opportunity to retain her coverage and in no way contributed as a direct or proximate cause to her loss of coverage.

100. The Department disenrolled Plaintiff Claflin without any notice. Claflin had no reasonable opportunity to retain her Medicaid coverage and in no way contributed as a direct or proximate cause to her loss of coverage.

101. Defendants' negligence caused Plaintiffs damages as alleged herein, and Plaintiffs are entitled to compensation.

## Count Two
## Constitutional Tort – Procedural Due Process

102. Plaintiffs incorporate herein all foregoing allegations as if set forth in full.

103. Article II, § 17 of the Montana Constitution provides that "[n]o person shall be deprived of life, liberty, or property without due process of law."

104. Plaintiffs had constitutionally protected liberty and property interests in the continuation of their Medicaid coverage.

105. Through their acts and omissions described above, Defendants deprived Plaintiffs of these interests.

106. Defendants administered a constitutionally inadequate process to deprive Plaintiffs of these interests, including a lack of notice and opportunity to be heard.

107. Defendants' actions were under the color of state law.

108. Defendants' deprivation of Plaintiffs' protected interests without constitutionally adequate notice and opportunity to be heard caused Plaintiffs' injuries and damages, and Plaintiffs are entitled to compensation.

**Count Three**
**Declaratory Judgment**

109. Plaintiffs incorporate herein all foregoing allegations as if set forth in full.

110. An actual controversy exists concerning whether Defendants wrongfully terminated Plaintiffs' Medicaid coverage, whether Defendants failed to provide constitutionally adequate notice procedures, whether Defendants breached duties owed to Plaintiffs under Montana law, and whether Defendants are responsible for Plaintiffs' resulting damages.

111. Pursuant to §§ 27-8-101 through 27-8-312, MCA, Plaintiffs seek a declaration that Defendants' conduct in administering and carrying out the challenged Medicaid disenrollments was wrongful and that Defendants are liable for the injuries and damages alleged herein.

**Count Four**
**Supplemental Relief**

112. Plaintiffs incorporate herein all foregoing allegations as if set forth in full.

113. This is an action by Plaintiffs, pursuant to § 27-8-313, MCA, to require Defendants to provide further relief as the Court considers necessary and proper to

enforce its declaratory judgment, to include a monetary judgment, injunctive relief, or both.

## JURY DEMAND

Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for the following relief:

1. For an order certifying this action as a class action pursuant to Montana Rule of Civil Procedure 23 with respect to the proposed Plaintiff Class, Mandatory Eligibility Subclass, and Lack of Notice Subclass;
2. For all past and future general and special damages to be determined at trial as a result of Defendants' conduct;
3. For a declaratory judgment that, by the conduct alleged herein, Defendants wrongfully terminated Plaintiffs' Medicaid coverage and are responsible for the resulting injuries and damages;
4. For all supplemental relief as the Court considers necessary and proper to enforce its declaratory judgment;
5. For attorney's fees, expenses, and costs incurred in this action, as permitted by common law, statute, or the parties' agreements;
6. For interest on all said sums as allowed by law; and
7. For such other relief as this Court deems appropriate.

Respectfully submitted this 11th day of June, 2026.

*/s/ Raph Graybill*
GRAYBILL LAW FIRM, PC
300 4th Street North
PO Box 3586
Great Falls, MT 59403
(406) 452-8566
raph@graybilllawfirm.com

*/s/ Andres Haladay*
UPPER SEVEN LAW
P.O. Box 31
Helena, MT 59624
(406) 998-6067
andres@uppersevenlaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 11, 2026, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

*/s/ Raph Graybill*
Raph Graybill